Harry **PORTWOOD** et al., Appellants,

v.

Jo Ann Portwood **BUCKALEW**, Guardian and Attorney-in-Fact for Harley Portwood, et al., Appellees.

No. 790.

Court of Civil Appeals of Texas, Tyler.

March 27, 1975.

Rehearing Denied April 24, 1975.

Brown, Herman, Scott, Dean & Miles, Beale Dean and J. Shelby Sharpe, Fort Worth, for appellant Harry Portwood.

Fillmore, Lambert, Farabee & Purtle, Ray Farabee, Wichita Falls, for appellant Sam Portwood.

Jennings, Montgomery & Dies, Frank L. Jennings, Graham, for appellant Dannie Portwood Fancher.

Law, Snakard, Brown & Gambill, Thomas H. Law, Marvin Champlin, Samuel A. Denny, Fort Worth, for appellees.

MOORE, Justice.

The principal issue in this case is whether a landowner, having executive leasing privileges, may demand and receive from the oil and gas lessee and keep for himself to the exclusion of the non-executives, overriding royalties and cash-per-acre payments, ostensibly paid for surface damages, where, by virtue of the terms of a partition deed, the non-executives were granted a right to participate in all royalties and bonuses.

The suit commenced as a multiple party action between the heirs of W. H. and Dottie Portwood, and involved the issue stated above. This appeal grows out of a cross-action between some of the heirs, and likewise involves the issue. The cross-action was filed by Jo Ann Portwood Buckalew who is the surviving wife of Billy Sunday Portwood and who is the Mother, guardian and attorney-in-fact for Harley Portwood, Linda Jo Portwood and Billy Sunday Portwood, Jr. Named as cross-defendants in the cross-action were appellants, Mrs. Dannie Fancher, Harry Portwood and Sam Portwood, who are the surviving sister and brothers of Billy Sunday Portwood. As grounds for a cause of action, appellee alleged in her cross-action that in 1948 and 1954, the Portwood heirs entered into a certain partition agreement [1] dividing the surface estate of the Portwood ranch but leaving the mineral estate undivided. She alleged that under the terms of the partition deed each heir was allotted the surface estate to certain tracts of land and that under the terms of the agreement it was stipulated that each of the respective surface owners was to have executive leasing privileges to lease the mineral estate under his land without the joinder of the other heirs. She further alleged that the agreement provided that the heirs were to share in all rentals, bonuses and royalties received from oil and gas leases in proportion to their ownership as set forth by the partition deed. She alleged that over the years since 1954, appellants had executed numerous oil and gas leases and in connection therewith had taken for themselves overriding royalties and cash bonuses classifying such payments as surface damages; that such self-dealing amounted to nothing more than a subterfuge in order to deprive her children of their rightful share to the royalties and bonuses which appellants labeled as payments for surface damages. Her prayer was for

---

1. The two Partition Agreements wherein the parties covenanted (1) to divide the surface among themselves and to leave the mineral estate undivided and (2) to give to the grantee of the surface of each respective tract the executive leasing rights to lease the minerals thereunder for the benefit of all of the heirs, without the joinder of the others are in substantially the same language and provide as follows:

"The respective grantors herein hereby convey to the respective grantees herein, their heirs, successors and assigns, full rights to execute and deliver oil, gas and mineral leases on all or any part of the above described lands conveyed to the respective grantees herein for and on behalf of all of the owners of such oil, gas and mineral rights acquired by such grantors and grantees under the Last Will and Testament of Dottie S. Portwood, deceased, for such consideration acceptable to such respective grantees, their heirs and assigns, at their discretion, without being joined by the other owners of such oil, gas and mineral rights, *provided that a royalty of at least 1/8th of the oil, gas and other minerals shall be retained in each of such leases so executed and delivered, for the benefit of all of the owners of such oil, gas and other minerals, and provided that the lease bonuses and rentals, and all of the same, shall be paid by the purchasers of such leases, directly to the parties owning such oil, gas and mineral rights, in the proportions of their ownership, as set out above,* as the same applies to the interest in and to the same acquired by all of the parties herein as devisees under the Last Will and Testament of Dottie S. Portwood, deceased, and such leases shall provide that the royalties retained shall be paid to the owners of such oil, gas and mineral rights, in the proportions of their ownership in and to such oil, gas and mineral rights, as set out above. * * *"
(Emphasis supplied.)
These instruments will hereinafter be referred to as the "partition agreement."

a recovery on behalf of her children for their proportionate share of all overriding royalties and cash bonuses taken by appellants and labeled as surface damages and for an accounting. Appellants denied generally the allegations of the cross-action and affirmatively alleged that appellee's cause of action was barred by the five-year statute of limitations. Trial was before a jury. The trial court rendered judgment in favor of the appellee based in part on the verdict of the jury and in part upon a judgment non obstante veredicto. Appellants duly perfected this appeal but specifically limit the scope of their appeal to that part of the judgment granting appellee a recovery upon her cross-action.

We affirm the judgment rendered by the trial court.

Before discussing the points of error, we think it appropriate to state some of the vital facts which do not appear to be in dispute, as well as some of the general principles of law applicable to those facts.

The Portwood Ranch, which is the subject of the partition agreement, consists of several thousand acres of land situated in Baylor, Throckmorton, Young and Archer Counties, Texas. The land is, for the most part, ranch land and has always been devoted to the pasturing of livestock. There is no dispute between the parties as to the execution of the partition agreement, nor is there any dispute with regard to the provisions thereof. Appellants do not deny that they have taken royalties or both royalties and cash-per-acre compensation for surface damages when executing leases upon the mineral estate of the Portwood lands. There is nothing in the partition agreement which would specifically prohibit such practice. It appears that all of the Portwood heirs, except appellee and her children, have, from time to time, engaged in the practice of taking for themselves overriding royalties and cash-per-acre compensation and labeling some surface damages. While the evidence shows that the production of oil and gas is calculated to cause at least some amount of surface damages, such damages are usually temporary as distinguished from permanent injury to the land. Usually the surface damage is confined to approximately one acre around the well site. It is customary, according to the evidence, in the oil and gas industry for the lessee to pay, and the landowner to accept, $50–$100 per well in payment for the surface damages. It is not customary, and is almost unheard of in the industry, for the lessee to agree to assign overriding royalty or agree to pay the landowner on a cash-per-acre basis for anticipated surface damages. The evidence shows that out of approximately 100 oil and gas leases executed in the area of the Portwood Ranch, the Portwood heirs were the only lessors who received overriding royalties or cash-per-acre compensation allegedly for surface damages. When leasing their own lands, in which appellee's children had no interest, the evidence shows that appellants did not take royalty or cash-per-acre compensation for surface damages, but were usually compensated for surface damages on a per-well basis. There is no evidence showing the specific amount of damages, if any, which were sustained by appellants by reason of the drilling and the production of oil, nor is there any evidence that the damages allegedly sustained by them bore any reasonable relationship to the royalties or cash-per-acre payments which they received. There is evidence to the effect that any damages sustained by them were negligible. Appellee concedes that the appellants were possibly entitled to reasonable surface damages in the amount of $50–$100 per well, but takes the position that the enormous amounts received by them were unreasonable and actually amounted to royalties and cash bonuses paid in consideration of the execution of the leases in which her children were entitled to participate. Appellants testified that they took surface damages in good faith believing they had a right to be compensated in such amounts

for the anticipated damages to their surface estate.

■ Since the partition agreement was executed by the parties to put into effect a family arrangement, it becomes apparent that a fiduciary relationship was created between the appellants and the appellee's children. 57 Tex.Jur.2d Trusts, Sec. 69.

■ As between the appellants and appellee's children, there is an implied covenant arising from the partition deed that the appellants would use the utmost fair dealing in executing oil and gas leases so as to protect the interest of appellee's children. Moore v. City of Beaumont, 195 S. W.2d 968 (Tex.Civ.App., Beaumont, 1946) affirmed 146 Tex. 46, 202 S.W.2d 448 (1947); Federal Land Bank of Houston v. United States, 168 F.Supp. 788, 144 Ct.Cl. 173 (1958); 2 Williams and Meyers, Oil and Gas Law, Sec. 339.3; Jones, Non-Participating Royalty, Vol. XXVI, Texas Law Review (1948) p. 569; also see Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543 (1937).

■ Generally, where a party having executive leasing privileges enters into a transaction in which he and the non-executive mineral holders are both interested and the executive is authorized to act for both parties, he must exact for the non-executives every benefit that he exacts for himself. If he could obtain overriding royalties or cash bonuses for the non-executives and himself, it was his duty to have done so. Morriss v. First Nat. Bank of Mission, 249 S.W.2d 269 (Tex.Civ.App., San Antonio, 1952, writ ref'd, n. r. e.); Texas v. 20th Century Fox Film, 178 F. Supp. 742 (N.D.1959), 286 F.2d 373 (5th Cir. 1961), cert. denied, 368 U.S. 818, 82 S.Ct. 33, 7 L.Ed.2d 24 (1961).

We now direct our attention to the points of error. For convenience we will discuss the points applying to each appellant, individually, and will then discuss the points found to be in common to the appeal of two or more appellants.

## THE APPEAL OF DANNIE PORTWOOD FANCHER

Under the terms of the partition deed Mrs. Fancher was allotted the surface estate on a 200-acre tract in Baylor County. Oil was discovered in the vicinity of this tract in 1954. By October, 1956, oil was being produced on three sides of the 200-acre tract from a depth of 1300–1400 feet making the 200-acre tract extremely desirable from the standpoint of producing oil cheaply. On October 19, 1956, Mrs. Fancher executed an oil and gas lease to Medlock Harbison, a representative of the Oakland Corporation. She received a bonus of $25.00 per acre and reserved a 1/8th royalty payable to herself and the other heirs in proportion to their ownership. In addition to this, and as a part of the same transaction, Mrs. Fancher demanded and received from Harbison an assignment of an overriding royalty interest of ⅔ths of ⅜ths (25%) of all the oil, gas and other minerals produced from the 200-acre tract. The assignment did not mention the appellee's children or any of the other heirs. Mrs. Fancher testified she took the assignment in consideration for the execution of a release of anticipated surface damages to the 200-acre tract. It is without dispute that after production commenced on the tract Mrs. Fancher did not advise the appellee or the other heirs of the 25% overriding royalty and kept all of such royalty income for herself. While she promptly filed the lease for record, the record shows that she waited several months before recording the assignment. The record also shows that Mrs. Fancher took the rather unusual step of causing a letter to be exchanged between her and the Oakland Corporation wherein it was recited that the consideration for the assignment of the 25% overriding royalty was for the release of surface damages. The letter was prepared by her attorney whom she employed to assist her in the transaction. She testified that her attorney at no time told her she could not take the royalty for surface damages and never advised her that there

was anything illegal, unfair or improper about the transaction. While her attorney corroborated her testimony, he testified that he told Mrs. Fancher that he found only one case that would countenance her taking the override for surface damages, and that it was an out-of-state case. He denied that he advised Mrs. Fancher that it would be fair to the other heirs to take surface damages with an override. There is nothing in the evidence to suggest that Harbison or the Oakland Corporation insisted on paying Mrs. Fancher the 25% override in consideration for a release of surface damages or ever insisted that a release be executed. The evidence shows that a letter release for surface damages was sent to the Oakland Corporation by appellant along with her request that it be signed and returned to her for "acceptance." The evidence further shows that after oil was discovered on the land, a division order was sent to appellee, but the order was prepared in such a manner as to conceal Mrs. Fancher's 25% overriding royalty interest. Over the years since oil was discovered, Mrs. Fancher derived royalty income from the 25% override in excess of $400,000.00. The evidence shows that although several wells were drilled on the land a total of approximately two acres were damaged.

By her first point of error Mrs. Fancher complains of the action of the trial court in disregarding the jury's answer to Special Issue No. 13. By this issue the court requested the jury to find whether the 25% overriding royalty taken by Mrs. Fancher was part of the bonus paid by the lessee. In connection with the issue the court instructed the jury that the term "bonus" means "any payment given for an oil and gas lease over and above the usual ⅛th royalty, whether the additional payment be paid or payable, and whether paid in cash or payable out of production." The jury answered: "It was not a part of the bonus."

Upon motion by appellee the court disregarded the issue. Appellant contends there was evidence to support the issue. Consequently, appellant takes the position that the court erred in refusing to render judgment in her favor based on the jury's finding. As we view the matter the overriding royalty was royalty as a matter of law. Therefore, the issue inquiring as to whether the royalty was a bonus was superfluous and immaterial. For this reason such finding could not support a judgment in favor of appellants and therefore the court did not err in disregarding it.

■ It is settled law that an overriding royalty is royalty. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341 (1957); Griffith v. Taylor, 156 Tex. 1, 291 S.W.2d 673 (1956).

In Griffith v. Taylor, supra, the Supreme Court of this State defined the terms "bonus" and "royalty" as follows:

"* * * it may be that the words 'bonus' and 'royalty' in their broadest concepts and meanings are conflicting and overlapping. On the other hand, when it is necessary that they be distinguished there is a narrower concept of the two terms as they are ordinarily and commonly used and understood in the oil and gas industry in which they do not conflict but are harmonious. In this narrower sense a reservation or a payment of a part or percentage of production under a lease which is to continue throughout the life of the lease is regarded as 'royalty', and a sum certain to be paid in cash or out of production is regarded as 'bonus.'"

■ In this instance the assignment recited that ⅔ths of ⅞ths of all the oil, gas and other minerals produced from the land was conveyed to appellant as overriding royalty free and clear of expense and was to continue throughout the term of the lease. The interest taken by appellant was royalty as a matter of law. Therefore, the issue inquiring as to whether it was a bonus should not have been submitted.

■ The fact that Mrs. Fancher and Mr. Harbison may have stipulated that the overriding royalty was not to be treated as royalty, but as compensation for surface damages, would not take it out of the catagory of royalty. The instrument of assignment must be construed for what it was, regardless of the interpretation placed on it by the parties. 43 Tex.Jur.2d, Oil and Gas, Sec. 380; State Nat. Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757, 762 (1940); Lane v. Elkins, 441 S.W.2d 871, 874 (Tex.Civ.App., Eastland, 1969, writ ref'd., n. r. e.).

■ Since the interest assigned to Mrs. Fancher was royalty, both the issue and the jury's finding was superfluous and immaterial. Under these circumstances the court did not err in disregarding the finding and in refusing to enter judgment for appellant based thereon. Owens v. State, 342 S.W.2d 183 (Tex.Civ.App., Fort Worth, 1961, n. w. h.), citing cases.

Appellant further complains in her first point of the action of the trial court in disregarding the jury's answer to Special Issue No. 28. By this issue the jury was requested to find whether Mrs. Fancher dealt with "utmost fairness" toward appellee's children at the time she negotiated for and received the 25% overriding royalty. The jury answered: "She did deal with utmost fairness." Upon motion by appellee the trial court disregarded the finding and rendered judgment in favor of appellee's children for their proportionate share of all the royalty income received by Mrs. Fancher from the overriding royalty, as well as their proportionate share of the royalty interest in kind.

■ It is well settled that the trial court is authorized to disregard the jury's answer to special issues and render a judgment non obstante veredicto where the record contains no evidence of probative force on which the jury could have made the findings. Rule 301, Texas Rules of Civil Procedure; McDonald, Texas Civil Prac-

tice, Sec. 17.30–17.32; Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684 (1959); Douglass v. Panama, 504 S.W.2d 776 (Tex.Sup. 1974). In acting on the motion all the evidence must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. Douglass v. Panama, supra; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952).

In Universal Commodities, Inc. v. Weed, 449 S.W.2d 106, 114 (Tex.Civ.App., Dallas, 1970, writ ref'd., n. r. e.), the court explained circumstances under which a judgment non obstante veredicto may be rendered stating as follows:

"The 'no evidence' rule is applicable before the court may properly instruct a verdict, or render a judgment *non obstante veredicto,* or disregard a jury's answers to certain issues. But the 'no evidence' rule does not mean exactly what its name might suggest. The real meaning of the rule is tersely stated by our Supreme Court in the landmark case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898), as follows:

" 'From a careful examination of the cases, it appears (1) that *it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being "any evidence"*; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force.' " (Emphasis by the Dallas Court of Civil Appeals.)

Appellant contends that the record contains evidence of sufficient probative force to support the jury's finding of "utmost fairness" on her part. Therefore, she argues that the trial court erred in disregarding the finding and entering judgment

**914**

in favor of the appellee's children for their proportionate share of the overriding royalty. We are not in accord with this proposition.

■ The principal testimony relied upon by appellant to raise the issue of "utmost fairness" is her own testimony wherein she testified she relied upon the advice of her attorney and believed she was authorized to take the royalty as compensation for surface damages. She also relies on the testimony of her attorney wherein he testified he did not advise her that there was anything illegal, unfair or improper about her taking overriding royalty for herself to the exclusion of the other heirs. Further, she relies on the fact that the oil and gas lessee signed a letter saying the 25% overriding royalty was paid to her in payment for a release of surface damages. As we view it, the evidence relied upon by appellant constitutes nothing more than a self-serving denial merely denying that she breached her obligation to deal with the other heirs in utmost fairness. When tested by the rule set forth in the cases cited above, we are of the opinion that the evidence relied on by appellant is not of sufficient probative force to support the finding that she discharged her duty in utmost fairness. On the contrary we think the record when taken as a whole shows self-dealing. The undisputed proof shows that Mrs. Fancher negotiated for and received the overriding royalty at the same time she negotiated for the sale of the oil and gas lease. There is nothing in the record suggesting that she could not have taken the override in behalf of all the Portwood heirs just as easily as she took it for herself. She had a duty under the terms of the partition agreement to share all royalty received by her with the other Portwood heirs irrespective of how or why she obtained it. We hold that appellant could not, acting for herself and the other non-executives, exact royalty for herself, label it surface damages, and thereby defeat the right of appellee's children to

participate therein. Lane v. Elkins, supra. The court did not err in so ruling.

## THE APPEAL OF HARRY PORTWOOD

Under the terms of the partition deed, appellant, Harry Portwood, was allotted the surface estate to various tracts of land. Over the years he executed five oil and gas leases. In each instance he negotiated for and received surface damages on a cash-per-acre basis.

On June 28, 1956, he executed the H. H. Portwood "A" Lease (also known as the Big Bruner Lease) covering 2,251 acres. He received a ⅛th royalty and $5.00 per acre bonus totaling approximately $11,000.-00 which he divided with the other heirs in accordance with the partition agreement. In addition, he demanded for himself and other members of his family who owned an interest in the surface estate $26.00 per acre for surface damages totaling approximately $58,000.00 in the event oil was produced. After the contingency occurred such amount was paid on January 16, 1957.

On May 6, 1956, he executed to Arnold H. Bruner Company a lease on 382.5 acres (referred to as the Little Bruner Lease). A bonus of $5.00 an acre was received, together with a ⅛th royalty, which he divided among the family. Prior to the execution of this lease he had conveyed his surface estate in this tract to his daughters. In connection with this lease he negotiated with the lessee for surface damages in the amount of $20.00 per acre for a total of $7,650.00. A release of surface damages to the land, as well as damages to personal property, was executed to the lessee by his daughters. Appellant also took for himself a ⅛th overriding royalty. In regard to this lease the trial court rendered a take-nothing judgment in favor of his daughters from which no appeal was taken. The royalty interest proved to have no value because of no production.

On April 26, 1956, he executed an oil and gas lease on 553.5 acres to Nortex Oil & Gas Corporation. Again he received a ⅛th royalty and a $5.00 per-acre bonus which he divided among the members of the family under the partition agreement. He, his wife and daughters (they being part owners of the surface) received $20.-00 per acre for a release of surface damages and personal property damages, totaling $11,070.00. Appellant also took for himself an overriding royalty of ⅛th. No production was obtained and the royalty proved valueless.

In the Snebold lease covering 200 acres, he obtained a ⅛th royalty and a $5.00 per-acre bonus and orally contracted with the lessee for the sum of $4.00 per acre for a release of surface damages, totaling $800.00.

In the Birdwell lease covering 240 acres, he orally contracted with the lessee for a ⅛th royalty and a $5.00 per acre for surface damages and was paid a total of $1,200.00 for a release.

Appellant complains by his first through eleventh points of the action of the trial court in disregarding the jury's finding on Special Issues 6, 15 through 21, 24 and 25. These issues consist of two groups. For convenience we will label Issues 6, 17, 19, 21 and 25 as the first group. In these issues the court inquired as to whether the additional royalty and cash-per-acre compensation was a part of the bonus paid by the lessee for the lease. The jury answered each of the five issues: "It was not a part of the bonus." Upon the motion of appellee the trial court disregarded the jury's findings. Appellant contends the court erred in disregarding the findings and in refusing to enter judgment in his favor based on the findings. Under the view we take, these issues were not controlling issues and were therefore immaterial, and for that reason the court did not err in disregarding them.

■ The issues, as framed, do not relate to the conduct of the appellant. They relate to the conduct of the oil and gas lessees. When the issue and the jury's answer are construed together, it simply means that the jury found that the oil and gas lessees did not pay the additional royalties and cash compensation as a part of the bonus for the leases. What the oil companies did or intended, standing alone, is not controlling. The controlling issue is whether the appellant, in negotiating for and taking the additional royalties and cash compensation, breached his obligation to deal with the non-executives with utmost fairness. Since none of the foregoing issues are controlling, the jury's findings thereon lend no comfort to appellant and the trial court did not err in disregarding them.

This brings us to appellant's contention that the court erred in disregarding the second group of issues, being numbers 15, 16, 18, 20 and 24. Each issue was tailored to fit the facts of each lease. The issues, in substance, read as follows: Do you find that Harry Portwood did not deal with utmost fairness at the time he executed the lease in question, in such a manner that he received the additional overriding royalties and/or additional cash-per-acre compensation? The jury answered each of the issues as follows: "He did deal with utmost fairness."

Upon motion by the appellee the trial court disregarded the jury's finding to the second group of issues wherein the jury found that appellant dealt with utmost fairness. Appellant contends there was evidence of sufficient probative force to support such finding. Consequently, he argues that the trial court erred in disregarding the findings and in rendering judgment against him upon the theory that he did not deal with utmost fairness.

The principal evidence relied on by appellant in support of the jury's finding is (1) he believed he was entitled to surface damages, (2) he employed attorneys to assist him in each transaction and none of them told him there was anything wrong in

**916**

taking surface damages, (3) that he executed a written release of surface damages on each of the five tracts and delivered the releases to the lessees; (4) he negotiated better leases than the other heirs and as a result the non-executives profited from his efforts; (5) there is nothing in the partition agreement prohibiting him from taking surface damages; (6) that he actually suffered some amount of damages; and (7) that there is evidence that a landowner can anticipate surface damages as a result of the production of oil and gas.

■■ The additional compensation taken by appellant was for anticipatory surface damages. In determining whether appellant acted in utmost fairness in taking for himself surface damages in the amount taken by him, his standard of conduct must be measured by that of an ordinary prudent surface owner in the exercise of a high degree of care. As we view the record there is no evidence of probative force showing that an ordinary prudent landowner, in the exercise of a high degree of care, could have reasonably anticipated surface damages in the large amount taken by appellant. The evidence shows that the production of oil and gas is not calculated to cause any great amount of damages, especially where the land is being used for the pasturing of livestock. Most of the evidence relied upon by appellant to sustain the jury's finding amounts to nothing more than a self-serving declaration denying any wrongdoing. There is no evidence showing that any of the various oil and gas lessees demanded a release of surface damages. The releases were prepared by appellant's attorney at his request. It thus appears that the releases constituted nothing more than a subterfuge and a self-serving denial of any wrongdoing. At any rate we do not believe the execution of the releases, standing alone, would constitute any evidence of "utmost fairness." Other evidence relied on by appellant to raise the issue of "utmost fairness" appears to be immaterial. There is nothing in the record to suggest that appellant could not

have taken the additional cash-per-acre compensation in behalf of the other non-executives just as easily as he did for himself. We think the evidence shows conclusively that the additional cash-per-acre compensation was accepted by appellant as a part of the consideration for the execution of the leases and were therefore bonuses. Minchen v. Fields, 162 Tex. 73, 345 S.W.2d 282, 285 (1961). The trial court did not err in disregarding the issues and awarding appellee's children their proportionate share of the bonuses.

By his twelfth and thirteenth points Harry Portwood contends that the trial court erred in overruling his objection to the term "bonus" in connection with Special Issue No. 3. In his fifteenth point he contends that the court erred in refusing to submit his requested Issue No. 3 in lieu of the issue submitted by the court. In connection with these points the record reveals that appellant acquired an assignment of a 17½% overriding royalty interest upon the land leased by him known as the "Big Bruner" or Portwood "A" Lease described above. Appellant denied that he took the overriding royalty as a part of the consideration for his agreeing to execute the lease. He testified he acquired the assignment by a separate transaction and that Bruner assigned him this interest in consideration of the sum of $5,000.00 which was to be repaid to him in the event of production and the execution of an oil and gas lease on a 100-acre tract of land owned by him in Baylor County. Appellee alleged that appellant received royalty income in excess of $150,000.00 from the override. She contended in the trial court that appellant exacted the 17½% override from Bruner as a part of the consideration for the Big Bruner Lease and her children were therefore entitled to their proportionate share of the income, as well as their share of the royalty in kind.

■ The trial court submitted the matter to the jury by Special Issue No. 3, reading in part as follows: "Do you find * * * that the overriding royalty

\* \* \* was a part of the bonus paid by Arnold H. Bruner for the H. H. Portwood 'A' Lease?" The jury answered: "It was a part of the bonus." In lieu of the foregoing Special Issue No. 3 appellant specially requested the following issue:

> "Do you find from a preponderance of the evidence that the overriding royalty interest in the H. H. Portwood 'A' Lease was assigned to Harry Portwood in consideration for the payment of $5,000.00 (to be returned if production was obtained) and the execution and delivery of an oil and gas lease covering 100 acres of land in T. E. & L. Company Survey No. 2147 in Baylor County, Texas?"

No error is reflected in the trial court's refusing to submit appellant's requested issue. Even if the court had submitted the issue and the jury had answered in the affirmative, it would not be a controlling issue since it did not inquire whether the 17½% override was acquired solely for the consideration described in the issue.

Next, appellant complains of the action of the court in overruling his objections to Special Issue No. 3 and in overruling his objection to the term "bonus." This issue, as well as the court's definition of the term "bonus," is the same as the issue and definition quoted above in our discussion of appellant Fancher's first point of error. We have heretofore ruled that when royalty is conveyed it is royalty and not a bonus, and that an issue such as this is superfluous and should not have been submitted because it is not controlling. For this reason appellant's objections to the issue, as well as to the term "bonus," become immaterial and are overruled for the same reasons stated in our discussion of appellant Fancher's first point of error.

■ By his fourteenth point appellant complains of the court's failure to define the term "utmost fairness" as used in Special Issue 14. This point is without merit because appellant failed to submit a re-quested definition. Consequently, he will be held to have waived his right to complain. Rule 279, T.R.C.P.; Frontier Feedlots, Inc. v. Conklin Bros., Inc., 476 S.W.2d 31 (Tex.Civ.App., Amarillo, 1971, writ ref'd, n. r. e.).

## THE APPEAL OF SAM PORTWOOD

On January 18, 1958, as owner of the surface estate covering 2,009 acres of land, Sam Portwood executed an oil and gas lease to J. R. Knezek for a ⅛th royalty and $3.00 per-acre bonus which he shared with the other heirs. In addition to the bonus he negotiated and obtained for himself the sum of $2.00 per acre for surface damages totaling $4,018.00. Only one well was drilled and it did not produce. On July 11, 1971, as surface owner of 9,126 acres Sam Portwood executed an oil and gas lease to Wayne King and obtained a bonus of $3.00 per acre totaling $27,378.00 which he shared with the other heirs. He also negotiated for and obtained $2.50 per acre for surface damages totaling $22,815.-00. According to the evidence only one well was drilled on this tract and it did not produce.

By special issues 38 and 40 the trial court requested the jury to find whether the $4,018.00 and the $22,815.00 received by appellant were part of the bonus paid by the lessees. The jury found in each instance that such sums were not a part of the bonus. By Special Issues 37 and 39 the jury was requested to find whether Sam Portwood dealt with utmost fairness toward appellee's children at the time he executed the two oil and gas leases in question. The jury found that he "did deal with utmost fairness."

Appellant by his first and second points contends that the trial court erred in disregarding the jury's findings on these issues and in rendering judgment non obstante infavor of appellee's children and awarding them a proportionate share of the funds taken as surface damages. He argues that the evidence contains some evidence of

probative force to sustain the jury's finding. We do not agree.

The record reveals that Sam Portwood was one of the plaintiffs in the main suit. As plaintiff he sought a recovery against Harry Portwood and Mrs. Fancher for his proportionate share of the surface damages collected by them on the ground that the surface damages actually amounted to royalty or bonus in which he was entitled to share. In his claim against them Sam alleged that the amount of surface damages taken by them was unreasonable and in violation of the accepted custom in the area of accepting only $50–$100 for damages for each well drilled.

Appellant now contends that there was evidence to support the jury's finding in his favor because, unlike his brother and sister, he only took a reasonable amount of surface damages. He contends the court erred in disregarding the jury's finding and in requiring him to share the additional cash-per-acre compensation with appellee's children.

◾ Appellant relies on his own testimony to support the jury's finding that he dealt with "utmost fairness." He testified he anticipated surface damages to his land. He admitted that he alone made the decision as to the amount of the bonus and the amount of cash-per-acre surface damages and the oil and gas lessee paid according to his demand. He admitted he had no factual basis for estimating the amount of the anticipated surface damages and his demand for surface damages was based on what he thought was reasonable. Unlike his brother and his sister he did not have an attorney. He testified, however, that he thought that by demanding and receiving surface damages he released the lessees. There is nothing to show that he could not have obtained the additional compensation or a cash bonus inuring to the appellee's children, just as easily as he obtained the additional compensation for himself. There is no evidence that he sustained any appreciable amount of damages

as a result of the oil and gas operations, nor is there any evidence that the amount he took bore any reasonable relationship to any anticipated damages.

We overrule appellant's points of error and hold that there is no evidence of probative force to support the finding that he dealt with "utmost fairness" for the same reasons discussed under appellant Harry Portwood's first through eleventh points.

◾ We are not to be understood as holding that surface owners such as appellants may never demand and accept a reasonable amount of surface damages solely for themselves. We are of the opinion that they may. However, neither of the appellants here sought reasonable surface damages by way of an offset in the event the court found that the additional compensation accepted by them amounted to royalties or bonuses.

## POINTS IN COMMON

Appellants, Dannie Fancher by her second point, and Harry Portwood by his seventeenth point, contend that the trial court erred in awarding appellee title to an undivided interest in the 25% and 17½% overriding royalties taken by them respectively. They argue that in order for appellee to recover an undivided interest in the override itself or any of the proceeds appellants received from the override, appellee had the burden of alleging that a constructive trust arose under which her children became the equitable owners of an interest in the overrides. Appellants argue that appellee did not plead the creation of a constructive trust and that therefore the court was not authorized to engraft a constructive trust upon appellants' legal title to their respective overriding royalty interests. We are not in accord with this contention.

◾ Appellee's pleading shows that she sought judgment against Mrs. Fancher and Harry Portwood for her children's proportionate share of all funds received

by virtue of the overrides. She also sought for her children recovery against Mrs. Fancher for a 111/720th interest in the 25% overriding royalty interest and a recovery from Harry Portwood for a 312/1920th interest in the 17½% overriding royalty interest. These pleadings, together with other pleadings alleging that appellants breached their duty to deal with appellee's children with utmost fairness would, in our opinion, be sufficient to authorize the entry of a judgment for a specific interest in the royalty upon a constructive trust theory. In addition, we think appellants waived their right to complain of appellee's pleading by failing to level a special exception thereto specifically pointing out the alleged defect or omission. Rule 90, T.R.C.P.; 2 McDonald, Texas Civil Practice, Sec. 7.21 (1970).

■ Appellant Fancher by her third and appellant Harry Portwood by his sixteenth point complain of the action of the trial court in disregarding the jury's answers to Special Issues 97 and 98. In response to these issues the jury found that appellants matured limitation title to the 25% and 17½% overriding royalty interest by virtue of their adverse claim for a period of five years under the provisions of Art. 5509, Vernon's Ann.Civ.Tex.St. Appellants argue that the trial court erred in disregarding these findings on the ground that appellee failed to plead that the minority of her children tolled the statute of limitation. We fail to find any merit in this contention.

Appellee alleged by her pleadings that "all of the children of Billy Sunday Portwood were minors during the period all of the transactions complained of herein occurred." The evidence shows without dispute that the children were minors during this period of time and that therefore Article 5509 was not applicable to them.

■ In any event appellants would not be entitled to rely on these findings as a defense. Special Issues Nos. 97 and 98 inquired only as to whether Mrs. Fancher and her lessee and Harry Portwood and his lessee, together held peaceable adverse possession of the ⅞th leasehold estates in which they held a 25% and 17½% overriding royalty respectively. The issues did not inquire as to whether appellants, individually, had held adverse possession of their overriding royalty interests adversely.

■ An overriding royalty interest is merely a non-possessory claim arising out of the possessory interest held by the lessee. Allied Chemical Corporation v. G. E. Kadane & Sons, 373 S.W.2d 778 (Tex. Civ.App., Eastland, 1963, n. w. h.). At no time after the execution of the oil and gas leases did appellants have possession of the mineral estate. Their possession extended only to the surface estate. Appellants could not rely on the five-year statute of limitations because they failed to meet the requirements of Article 5515, V.A.T.S., requiring actual and visible appropriation of the land. Barr v. Wall, 265 S.W.2d 208 (Tex.Civ.App. Texarkana, 1953, writ ref'd., n. r. e.). The jury's findings that appellants, together with their lessees, held adverse possession of the leasehold estate are therefore without support in the evidence and the trial court was correct in disregarding them.

By the fourth and fifth points of Mrs. Fancher and the eighteenth and nineteenth points of Harry Portwood, appellants complain of the trial court's finding, as a matter of law, that the date of the marriage of appellee and Don Buckalew was on November 7, 1957. They argue that the date of the marriage was a controverted fact issue and that the court erred in refusing to submit the issue to the jury.

The date of her marriage was a matter of vital importance to appellants because under her late husband's will if she remarried on some date after November 7, 1957, Mrs. Buckalew, in her individual capacity, would be entitled to ¼th of the amount recovered between that date and the date of her marriage. In her pleading she sought a recovery only in behalf of her children.

Thus, if Mrs. Buckalew did, in fact, remarry on some date after November 7, 1957, she waived her ¼th interest and appellants would have been obligated to her children for only ¾th of the overriding royalties and bonuses from November 7, 1957, until the date of her marriage.

Prior to the trial the court entered an order of severance ordering a separate trial on the liability and damage issues. However, at the conclusion of the trial upon the liability issues, the trial court entered judgment for appellee as guardian for the children for a ¾th interest in the overriding royalty without ordering a separate trial on the damage issues. Appellants maintain that the cause must be reversed and a jury empanelled to determine the date of the marriage. We do not agree.

■ On cross-examination Mrs. Buckalew testified that she was married on November 7, 1957. When counsel for appellants attempted to impeach her testimony, the court retired the jury. By way of a bill of exception appellants offered certain admissions made by Mrs. Buckalew in another suit wherein she stated she did not know the exact date of her marriage but that it was sometime between 1957 and 1962. At the hearing on the bill of exception she testified that although they married on November 7, 1957, she and Don Buckalew repeated their marriage vows again in Mexico in 1967 "to start life all over again." She denied that they had ever been divorced. She further admitted that she had received ¼th of the income from her late husband's estate until September, 1962, knowing that she was not authorized by the will to receive income after her marriage. Appellants requested that such testimony be submitted to the jury. Counsel for appellee objected on the ground that it was irrelevant in the trial of the liability issue. Counsel for appellee tendered to the court an instrument he described as the original marriage certificate showing that appellee was married to Don Buckalew in the State of Nevada; that the marriage certificate was recorded in that state in Book 57 under number 91959, with the certificate being numbered 353637; that it showed she and Mr. Buckalew were married on November 7, 1957, by Thomas J. Dailey, the pastor of St. Pauls Lutheran Church and that the certificate was recorded in the offices of the Clerk in Clark County, Nevada. Counsel further stated to the court that he had exhibited the marriage certificate to counsel for appellants on the day before. The marriage certificate does not appear to have been formally offered in evidence. The trial court sustained appellee's objection and refused to submit the matter to the jury. Counsel for appellee states in his brief that the certificate was exhibited to the trial judge. Appellants do not challenge the court's refusal to order a separate trial of the issue on the ground that the marriage certificate was not properly in evidence before the court, but contend that the evidence elicited on the bill of exception was sufficient to raise a fact issue as to the date of marriage. Therefore, they take the position that they were entitled to have a jury determine the issue. We are of the opinion that the evidence before the court was sufficient to conclusively establish the date of the marriage and that no error is reflected by the court's so finding. Under the record presented here we think the issue was one of law for the determination of the trial judge. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Perren v. Baker Hotel of Dallas, 228 S.W.2d 311 (Tex. Civ.App., Waco, 1950, n.w.h.); Joske v. Irvine, supra; 3 McDonald, Sec. 11.28.1–D I & II.

Next, all three appellants attack the judgment on the ground that the trial court erred in awarding appellee interest at the rate of 10% on the sums found to be due appellee's children from the date such sums were taken by appellants. Under the circumstances presented by this record, we think the trial court was authorized to award interest at this rate and we overrule Mrs. Fancher's sixth point; appellant Har-

ry Portwood's twelfth point; and appellant Sam Portwood's third point.

The court awarded appellee interest at the rate of 10% upon all cash payments taken by the respective appellants for surface damages and 10% interest upon the amount received from overriding royalties prior to May 1, 1965, taken by appellants Fancher and Harry Portwood.

 Ordinarily a party is entitled to compensation at the rate of 6% for the detention of money. Art. 5069–1.05, V.A.T.S.; Davidson v. Clearman, 391 S.W.2d 48, 52–53 (Tex.Sup.1965). The courts of this state recognize, however, that where a fiduciary has violated his duty, interest at the highest legal rate of 10% per annum may be awarded to prevent him from making a profit on funds appropriated by him. Ward v. Maryland Casualty Co., 140 Tex. 124, 166 S.W.2d 117 (1942, opinion adopted); Anderson v. Armstrong, 132 Tex. 122, 120 S.W.2d 444 (1938, opinion adopted); Langford v. Shamburger, 392 F.2d 939 (5th Cir. 1968).

Finally, appellants Harry Portwood by his 21st point and Dannie Fancher by her seventh point[2] contend that the trial court erred in changing venue of the cause from Baylor County to Wichita County.

Rule 257, Texas Rules of Civil Procedure, authorizes the trial judge to order a change of venue where the evidence shows (a) that there exists in the county of suit so great a prejudice that the applicant cannot obtain a fair and impartial trial; (b) that there is a combination against the applicant instigated by influencial persons by reason of which he cannot expect a fair and impartial trial; and (c) for other sufficient cause to be determined by the court.

 The trial court is vested with wide discretion in passing on an application for change of venue. 59 Tex.Jur.2d Venue,

Sec. 129. In the absence of an abuse of discretion an order denying or changing venue will not be disturbed on appeal. Bennett v. Jackson, 172 S.W.2d 395 (Tex. Civ.App., Waco, 1943, writ ref'd., w. o. m.).

The evidence shows that Baylor County, the county in which the main suit was originally filed by Sam Portwood and his sister, Jessie Lee Hargrave, is a sparsely populated county with approximately 5,000 residents. At the time of the hearing on the application to change venue, appellants, Dannie Fancher and Harry Portwood, were residents of Baylor County and were engaged in various business activities in the county. Mrs. Fancher was well known because of her substantial gifts to the churches in the county and to the City of Seymour. The testimony shows that the Portwood family had a reputation for family litigation and a previous suit between appellee and Mrs. Fancher had resulted in a "hung jury." There is testimony showing that Mrs. Fancher transferred some of her funds out of a local bank after officials of the bank testified against her cause at the hearing for change of venue. The record reveals that the lawsuit had been pending approximately eight years before the hearing for change of venue. Tom Craddock testified that the existence of the lawsuit was common knowledge all over the county, and that there had never been a case in the county that had caused such widespread differences of opinion. Bob Farr testified that a great number of people identified with one faction of the family or another. A. F. Wirz, the only witness called by appellants, testified that he had heard very little discussion of the case and he was of the opinion that the parties could receive a fair and impartial trial in the county.

 Insofar as the appellee is concerned, we think the foregoing evidence is sufficient to support a change of venue un-

---

2. This point is conditional and is urged only in the event the cause is ultimately reversed and rendered as between appellee and appellant Fancher.

der Subdivision (b) and (c) of Rule 257, Texas Rules of Civil Procedure. The evidence shows that a great number of the people had already identified themselves on one side of the family or another. Circumstantially, at least, there is some evidence that appellants had used their influence to induce other persons in the county to side against appellee. The trial court heard the evidence and saw the witnesses and thereafter determined that a change of venue was required. Under the record before us, we do not believe we would be justified in finding an abuse of discretion.

Appellee, Jo Ann Buckalew, attacks the judgment by two crosspoints. In her first point she contends that the trial court erred in not awarding her interest at the rate of 10% per annum or alternatively, at the rate of 6% per annum on her children's interest on the income from the 17½% overriding royalty acquired by Harry Portwood which was held in suspense by the pipeline company from May 1, 1965, to the date of judgment.[3] Appellee's second crosspoint is identical with the first, except that the second crosspoint relates to the 25% overriding royalty acquired by Dannie Portwood Fancher. The points are overruled.

 Appellee did not except to the judgment, give notice of appeal therefrom, or in any way inform the court of her dissatisfaction with the judgment entered. Her complaint is waived. Rule 324, Texas Rules of Civil Procedure; Maloney v. Strain, 410 S.W.2d 650 (Tex.Civ.App., Eastland, 1966, n. w. h.); C. H. Harrison Company v. H. R. M. Inc., 412 S.W.2d 912 (Tex.Civ.App., Waco, 1967, ref'd., n. r. e.); Security Insurance Company v. Pioneer Casualty Company, 449 S.W.2d 158 (Tex. Civ.App., Houston, 1st Dist., 1969, ref'd., n. r. e.).

Affirmed.

---

3. Appellee's counsel upon oral argument waived that portion of the crosspoints insofar as they urge error for failure to grant interest from and after the date of judgment.